Filed 11/4/15  P. v. Tackitt CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES RONALD TACKITT, JR.,<br><br>    Defendant and Appellant. | F069535<br><br>(Super. Ct. No. BF146565A)<br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Kern County.  John S. Somers, Judge.

Jonathan E. Berger, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Kane, Acting P.J., Franson, J. and Smith, J.

The jury found James Ronald Tackitt, Jr., guilty of assault with a firearm as a result of a dispute he had with his wife.  (Pen. Code, § 245, subd. (a)(2).)[1]  Tackitt, who worked for the Kern County Sheriff's Department as a detentions deputy at the time of the offense, was also found to have used a firearm in commission of the offense within the meaning of section 12022.5, subdivision (a).

Appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 asserting that after reviewing the file he did not identify any arguable issues.  By letter dated October 30, 2014, we invited Tackitt to submit a letter identifying any grounds for appeal he wanted this court to consider.  Tackitt did not respond to our invitation.

After a thorough review of the record, we find no arguable issue and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

### *The Information*

The information charged Tackitt with assault with a firearm (§ 245, subd. (a)(2)), making a criminal threat (§ 422), and false imprisonment through the use of violence or menace (§§ 236, 237).  Each count also alleged as an enhancement that Tackitt personally used a firearm during the commission of the offense within the meaning of section 12022.5, subdivision (a).  The charges arose out of a single incident, and the victim was Tackitt's wife, Lamar Marina Tackitt.[2]

---

[1]      All statutory references are to the Penal Code unless otherwise stated.

[2]      We refer to Lamar Marina Tackitt, and all other individuals who share the last name of Tackitt, by their first name to ease the reader's task and avoid confusion with defendant.  No disrespect is intended.  We refer to the victim as Marina as this is the name by which she is known.

### *The Prosecution Evidence*

Marina testified that in January 2013 her marriage with Tackitt was going through a difficult period, with the parties considering possibly divorcing. In the prior year the two had separated for approximately three months.

On the morning of the incident, Marina was getting ready to attend class at the local junior college. Tackitt woke up as Marina was getting ready, and an argument ensued over scheduling. Normally, when Marina had classes, Tackitt was off of work and took care of their daughter. On this morning, Tackitt realized he was scheduled to teach a class, so a conflict arose over deciding who would take care of the child. The tension increased as the efforts to find someone to watch their daughter were unsuccessful.

Marina continued to get ready for class. As she was putting away her blow dryer, Tackitt grabbed her arm and pushed her back. When Marina looked up, she noticed Tackitt had his gun in his hand. The gun did not appear loaded because Tackitt had the magazine in his hand. He placed the magazine on the counter and instructed Marina to get into the closet. As Marina walked towards the walk-in closet, she heard Tackitt insert the magazine into the handgun, and heard him pull back the slide on the weapon to chamber a round. When Marina got into the closet, she turned to face Tackitt. He instructed her to turn around so she could not see him. Tackitt then told her to get on her knees, and Marina complied. Marina then felt the barrel of the gun on the back of her head. She repeatedly begged Tackitt to stop. Tackitt said he was tired of Marina and her nagging him, and he was going to shoot her and then commit suicide. Tackitt said he hated Marina and he could not continue to live his life. Marina kept talking to Tackitt, eventually calming him down. Marina was eventually permitted to leave the closet, and she took her daughter and left the house. Marina felt she needed to be somewhere safe, so she drove to her job and obtained assistance in calling Alliance Against Family Violence. Later that day, Marina met with a representative of the group and the two went

3.

to the police station. While at the police station she placed a phone call to Tackitt in an attempt to get him to incriminate himself. The detective recorded the phone call, which was played for the jury. During the phone call Tackitt did not admit he assaulted Marina that morning, however he did not deny the event had occurred instead stating that he knew she was trying to get him to incriminate himself.

Marina also testified about prior incidents of domestic violence that occurred after their separation but before the last incident. The first incident occurred when Marina and Tackitt had been arguing. Marina finally told Tackitt she was done arguing, and she got up from the bed. When she got up her pillow fell to the ground. Marina picked the pillow up and tossed it on the bed. As Marina walked away, Tackitt accused her of throwing the pillow at him. He then grabbed a water bottle from the nightstand and threw it at her hitting her buttocks.

The second incident occurred one night when Tackitt had been drinking with some friends. He was drunk when he came home, and Marina was asleep in bed. Tackitt woke Marina up to talk about a situation they had been arguing about earlier, but Marina wanted to sleep because she had to work in the morning. Tackitt insisted they talk, so Marina left the bedroom and went to the bedroom of her cousin, who also lived at the house. Tackitt followed Marina into the cousin's bedroom and sat on the bed next to Marina. Tackitt insisted she return to the master bedroom so the two could talk, and when Marina would not leave he placed his hand on the back of her head close to her ear, and tried to pull her up. As Marina resisted Tackitt placed his finger in her ear, which caused a little pain. The two eventually went to the living room to continue the discussion.

The third incident occurred when Marina came home from work to find Tackitt and some friends drinking at the house. The men had made a mess in the kitchen, so Marina began cleaning it up. Tackitt wanted to argue, and Marina told him no. Tackitt eventually came up behind her, twisted her arm, and pinned her against the counter.

4.

Tackitt did not stop until there was a loud pop from Marina's wrist area. Tackitt then let her go, but refused to take her to the doctor to have the arm examined.

Marina also testified about a phone conversation she had with defendant's mother, Sherry Tackitt, a few weeks before the trial. In that conversation Sherry suggested to Marina that Marina go to the district attorney's office and convince them to drop the charges. Marina also heard Tackitt in the background say "I know, mom, but we're going to have to do something about this."

Bakersfield Police Detective Gary Carruesco searched the Tackitt home after the incident. He found in the top dresser drawer a firearm in a holster. There was one round in the chamber of the gun, and nine rounds in the magazine. He also identified two of the maneuvers used by Tackitt on Marina as pain compliance maneuvers designed to get someone to move in a specific direction.

Lucia Salazar, Marina's cousin, testified about the incident when Tackitt came home drunk and wanted to talk to Marina. Salazar confirmed the two ended up in her bedroom, Tackitt was belligerent, and they finally went to talk in the living room. Salazar also confirmed that Tackitt had Marina in some type of head hold which prevented Marina from moving.

### The Defense Evidence

Joel Gil works with Tackitt and was a family friend, but now remains friendly with Tackitt. Gil thought Marina was jealous of Tackitt's friends. She did not want to spend time with them and often convinced Tackitt to leave a gathering when he did not want to do so. Gil never saw Tackitt be violent or aggressive with Marina, nor did he ever hear Tackitt threaten her. Tackitt would come to Gil's house when he had been arguing with Marina, and Gil would attempt to provide advice. He also saw Marina accuse Tackitt of cheating on one or two occasions.

Christopher Chadd also met Tackitt through work. He saw Marina on a few occasions, and thought she got upset with Tackitt on a few occasions. He also saw a text

5.

where Marina accused Tackitt of being unfaithful. Chadd did not believe Tackitt would harm Marina.

Karen Parker has known both Marina and Tackitt for several years and considered them close friends. They usually got together on weekends for family-oriented activities. She described their marriage as normal, and testified she never saw them argue. On one occasion Marina asked Parker to watch her daughter while she followed Tackitt to see where he went. She also tried to unlock Tackitt's phone to check on him.

Defense counsel also called district attorney investigator Herman Caldas. Caldas had interviewed Marina. The purpose of the exam was to expose differences between the statement Marina gave to Caldas and her trial testimony. While there were several minor differences, Marina's version of the significant events remained the same.

Tackitt testified on his own behalf. He began by explaining he had limited contact with the Communication Center, apparently in an attempt to rebut Marina's testimony that she was afraid to call for emergency services because of Tackitt's claim that he had a lot of contacts in law enforcement. He also testified that he showed Marina various control holds, apparently to suggest she knew of these holds and made up her story about Tackitt using them on her.

Tackitt testified he kept his off-duty weapon unloaded when he was at home, but he carried it with him whenever he left the house. He loaded the weapon before he left the house. He claimed Marina never shot either his duty weapon or his off-duty weapon.

Tackitt admitted he and Marina were experiencing marriage problems, and the two separated during the summer of 2012. Part of the problem was that Marina accused him of cheating on her. He also admitted that he had a relationship with someone else when the two were separated. After the two reunited, Marina continued to complain about Tackitt's friends, his work schedule, and the amount he slept. Marina would follow Tackitt when he went out, and went through his phone checking up on him.

6.

Regarding the previous incidents of domestic violence, Tackitt admitted that he threw the water bottle at her after she hit him with the pillow. However, he claimed he was not trying to hit her. He denied, however, placing her in control holds involving twisting her arm or putting his fingers behind her ear.

On the day in question, Tackitt admitted he and Marina had a scheduling problem, but claimed he resolved it by cancelling his class and rescheduling it for the next week. However, the previous day he had received a text message from Marina informing him she was leaving him by the weekend, and they needed to decide what she should take with her. The two had been discussing separating, although Tackitt stated no definitive decision had been made. Tackitt responded to Marina's text by telling her to take whatever she wanted, but he would be willing to leave the house if that is what she wanted him to do.

The next morning, the morning of the incident, after the discussion about scheduling, Tackitt told Marina he did not want her to leave. Marina referred to his relationship with the other woman. Tackitt had not admitted having a relationship up until that time, but Marina stated she knew he had done so, and the marriage would never be the same as long as he kept denying he had an affair. Finally, Tackitt admitted he had the affair. Marina became very angry, called the women he worked with whores, and claimed he could not have their daughter around whores.

Tackitt decided to leave. He went to the closet to get some clothes so he could do so, and the argument continued in there. Marina said she was going to move in with her parents, and Tackitt would never see their daughter again. Tackitt became angry, but he continued to gather his things, including his off-duty weapon. While Marina dried her hair, he loaded his off-duty weapon in preparation for leaving, as he always did before he left the house. Tackitt put the weapon back in the holster, picked up his wallet and keys. When Marina came out of the bathroom, they continued to argue. Tackitt still had his weapon in his hand, but it was in the holster. Tackitt admitted that he made hand

7.

gestures during the argument with the gun in his hand, but only as a part of the argument and not as a threatening gesture.

Tackitt went back into the closet to gather his things, and Marina followed him inside. The two continued arguing over custody, his affair, and whether she was going to leave. Marina looked down and saw the weapon, which was still in the holster, in Tackitt's hand. She commented that it was going to go off. Tackitt realized that the gun may have frightened Marina, so he assured her it would not go off, and placed it on the closet shelf next to his duty weapon.

The two continued arguing in the closet, with Tackitt finally telling Marina the marriage was over, and she could stay in the house with their daughter. The two finally sat in the closet and talked about the situation. When Marina left the house, Tackitt walked her to the car and placed their daughter in the car seat. Tackitt did not take his weapon from the shelf until after Marina had left the house.

Tackitt denied ever intentionally pointing the gun at Marina, ever placing her in a control hold, ever threatening her, or pulling her into the closet.

Later that day Marina first texted Tackitt, and then called him. Marina asked if she could go crib shopping with a friend, and Tackitt responded positively.

Regarding the recent phone call between Marina and Tackitt's mother, Tackitt testified that he did not know his mother was talking to Marina. He did recall that his mother and father had gotten new phones, and that there was something wrong with his mother's phone. He recalled making a comment to his mother that she needed to get the phone fixed.

On cross-examination Tackitt admitted he was very angry with Marina that morning.

### *Closing Argument*

The prosecutor argued that Marina's testimony was believable, while Tackitt's testimony was not. He also emphasized the evidence that supported Marina's testimony,

8.

specifically finding Tackitt's off-duty weapon in a loaded condition as described by Marina, and Tackitt's failure to unequivocally deny that he had pointed the gun at Marina in the pretext phone call.

Defense counsel argued Marina was not believable, citing the numerous minor inconsistencies between her testimony, her statement to Carruesco, and her statement to Caldas. She described Marina as a jealous and vindictive woman who concocted this story to gain revenge against Tackitt for cheating on her. She also asserted that Tackitt's testimony was consistent with his statements in the pretext phone call.

### *Verdict and Sentencing*

The jury could not reach a verdict as to counts 2 and 3, and the trial court declared a mistrial as to those counts. The jury found Tackitt guilty of assault with a firearm in count 1, and also found true the personal use of a gun enhancement. The prosecution dismissed counts 2 and 3 after the verdict was read.

The trial court sentenced Tackitt to a midterm sentence of three years for the assault charge, and the midterm of four years for the enhancement, for a total term of seven years in prison.

## DISCUSSION

As stated in the introduction, appellate counsel filed a brief asserting he could not identify any arguable issues on the appeal of this case. After a thorough review of the record, we concur with appellate counsel.

Marina's testimony provided substantial evidence to support the verdict. The issue was which version of the events the jury would find credible, Marina's or Tackitt's. The only disputed evidentiary issue was the introduction of past incidents of domestic violence pursuant to Evidence Code section 1109, and the trial court acted well within its discretion in allowing the testimony. The incidents were not particularly prejudicial, as that term is used in the statute, as they did not result in any serious injury, and were considerably less serious than the charges in this case. There was no dispute as to jury

9.

instructions, which were appropriate for the facts and charges in this case. Closing argument for both parties was well within the bounds of reasonableness. The trial court sentenced Tackitt to a midterm sentence, again acting well within its discretion. Finally, the enhancement was properly imposed even though use of the firearm was an element of the offense. (§ 12022.5, subd. (d).)

## DISPOSITION

The judgment is affirmed.